ANNIE E. REVSBECH vs. BOSTON ELEVATED RAILWAY COMPANY.

Middlesex.   March 9, 1931. — April 6, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Negligence*, Street railway.

At the trial of an action for personal injuries against a street railway company, there was evidence that the plaintiff, a woman, boarded the car, paid her fare and took hold of the rail around the fare box; that, as the car gave a sudden jerk, she tightened her hold; that then it gave a "terrible jerk" in the opposite direction and her hold was broken and she was thrown with great force to the floor and up over the step leading to the seats in the car; and that the car gave another jerk and she was thrown over on her left side and was injured. *Held*, that

(1) The trial judge properly refused a ruling requested by the defendant that "The jury would be warranted in inferring negligence on the part of the defendant . . . without any positive evidence of negligence having been introduced only if they should find as a fact that the plaintiff's firm hold was broken by an unusual and extraordinary start and also they must believe and find that the plaintiff was thrown and injured thereby and that the physical facts indicated a start of an unusual and extraordinary nature";

(2) A finding was warranted that the car was started with a jerk or jolt which was greater than that incidental to its ordinary operation and outside that of common experience;

(3) A finding that the defendant was negligent was warranted.

TORT.   Writ dated April 18, 1923.

Material evidence at the trial in the Superior Court before *P. J. O'Connell*, J., is stated in the opinion.  The judge denied a motion by the defendant that a verdict be ordered in its favor.  The jury found for the plaintiff in the sum of $10,000.  The defendant alleged exceptions.

*C. S. Walkup, Jr.*, for the defendant.

*J. J. O'Hare*, for the plaintiff.

CROSBY, J.  This is an action to recover for personal injuries alleged to have been received by the plaintiff while a passenger on a car of the defendant.  The case is before us on two exceptions saved by the defendant, the first, to the

refusal of the trial judge to grant the defendant's fifth request, and the second, to the refusal to grant the defendant's motion for a directed verdict.

The plaintiff, who was forty-eight years of age at the time of the accident, testified in substance that, accompanied by her son on September 17, 1922, at shortly after six o'clock in the afternoon, she boarded a car of the defendant in Boston at the corner of St. Mary's and Beacon streets, which was a regular stopping place; that she carried a small overnight bag and a small purse on her right arm; that when she entered the car she stopped at the fare box and deposited her fare; that she took hold of the rail around the box and the car gave a sudden jerk forward; that she tightened her hold, then "it gave this terrible jerk backwards" and her hold was broken and she was thrown with great force to the floor; that the car gave another jerk and she was thrown over on her left side; that she was thrown up over the step between the fare box and the place where the seats for passengers were located and up toward the side seats, resulting in injuries to her knee, leg, elbow and back. She further testified that, at the time of the backward movement of the car when she was thrown down, "The car just seemed to stand on end."

The plaintiff's son, Morton Revsbech, who was fourteen years of age at the time of the accident, testified that he and his mother boarded the rear car of a two-car train; that he ran ahead of her to the second cross seat and took hold of it waiting for his mother; that suddenly the car started backwards with a very violent jerk, "and it seemed to be climbing up, as it was going"; that he was thrown back and around, then, without any stop between, the car suddenly went forward with great violence and he was thrown into a seat; that as he was thrown back he saw his mother going down; that he saw his mother rising from the floor; that she was quite a way up in the car, "She was sprawled along where the long seats are and up near where the cross seats are"; that her head was up about six or seven feet from where he was standing. He further testified that when she was at the fare box she was holding on

to the rail in front of it; that he was holding on to his seat and then he was thrown back and saw her fall. He further testified that "When the car went backwards he saw the conductor move. 'He seemed coming in my direction, it would be forward to me.' 'He fell backwards and came towards me in my direction'"; that he did not see the conductor fall but saw him swerve in the act of falling. He afterwards testified that he did not see the conductor thrown to the floor of the car or see him on the floor.

There was testimony from which the jury would have been warranted in finding that as a result of the plaintiff's fall she was severely injured.

The defendant's fifth request is as follows: "The jury would be warranted in inferring negligence on the part of the defendant company, its agents, servants or employees without any positive evidence of negligence having been introduced only if they should find as a fact that the plaintiff's firm hold was broken by an unusual and extraordinary start and also they must believe and find that the plaintiff was thrown and injured thereby and that the physical facts indicated a start of an unusual and extraordinary nature." This request was rightly refused. The request could not properly have been given as a general statement of the law; it was not pertinent to facts which could have been found in the case at bar. If, as the jury could have found, the plaintiff while having a firm hold upon the rail was thrown up and over the step leading to the rear of the car for a distance of six or seven feet and was injured as described, it could have been further found that the accident was not due to an ordinary and usual jerk of the car but resulted from an unusual and negligent act of the motorman, and the judge in substance so instructed the jury.

It is well settled by many decisions of this court that a street railway company is not liable for injuries caused to passengers by ordinary jolts in the starting and stopping of its cars, and the judge fully and accurately so instructed the jury. It is equally well settled that, if a street car is stopped or started with a jerk or jolt which is greater than is incidental to its ordinary operation and outside that of

common experience, negligent operation of the car can be inferred. The question, whether a car is stopped or started with an unusual or unnecessary jerk or jolt depends upon the facts in each case as shown by the evidence. The case at bar is governed by *Convery* v. *Eastern Massachusetts Street Railway*, 252 Mass. 418, *Warren* v. *Boston Elevated Railway*, 259 Mass. 226, *Weiner* v. *Boston Elevated Railway*, 262 Mass. 539, *Hallinan* v. *Worcester Consolidated Street Railway*, 273 Mass. 27.

The evidence of physical facts warranted a finding that the car was started in an unusual and negligent manner. It follows that the defendant's motion for a directed verdict was rightly denied.

*Exceptions overruled.*